161917 and number 161923 Nelson R. Sharp et al. versus Hylas Yachts, LLC et al. Good morning, Your Honor. My name is Jeffrey Baker. I'm here on behalf of Hylas Yachts. May it please the Court, Your Honor, I would like to reserve two minutes for rebuttal. Yes, you may have it. Thank you, Judge. I'd like to start with inconsistency of verdict. It is Hylas' view that the jury's failure to award any damages to Hylas against GMT cannot be reconciled with the factual record, and therefore the verdict is inconsistent. The Court should not have entered judgment in this case. In fact, I refer the Court specifically to Rule 49, which prohibits the entry of judgment where the verdict is inconsistent. This case, the boom, the defects in the design and manufacture of the boom dominated the case. In fact, Mr. Sharp was forced to replace the boom at a cost of $140,000 plus labor. Mr. Sharp testified that because of problems with the boom, the yacht became unusable. I refer the Court to page 6 of my brief. There were other problems, certainly, which I recognize, Your Honors, and I concede. There were problems with the toilets, a sticky throttle for the engine, and the battery chargers. But I submit to Your Honors... What about the hydraulics? I'm sorry, Judge? Weren't there problems with the hydraulics? Yes, in addition, there were problems with the hydraulics. The problems with the hydraulics, however, we submit, were related to the boom, and... But how do we know the jury just didn't find that, irrespective of the particular problems with the boom itself, the hydraulics alone could have been enough to cause all of these difficulties? I don't believe that Mr. Sharp's testimony was consistent with that postulate, Your Honor. I refer again to the fact that the boom was the primary... The record is bursting with evidence that the boom and the problems related with the boom were what caused Mr. Sharp to suffer loss of the use of his yacht, repair costs, and ultimately, the need to replace it. So I submit to Your Honor, yes, there were problems with the hydraulics. I further submit that they were repaired under warranty, and the problems relating to the hydraulics were a function of the failure of the boom. The boom fell off on December 10, 2010, Your Honor, and crashed onto the hydraulic line, which severed the hydraulic line. That was repaired by island rigging in late December of 2010. When the yacht first left after the closing on December 4th, Your Honor, Mr. Sharp went off into the international waters, and then immediately returned because the hydraulics were leaking, and Hylus repaired the hydraulic yet again. So I submit, yes, I recognize that there was a problem with the hydraulic lines, but I submit to Your Honor, the record makes clear that this problem with hydraulics was relatively minor and fixed under warranty. Not so with respect to the boom. And I think another argument is that here, a particular pressure intensifier was applied, I think by Harkin, without GMT's knowledge. How do we know the jury just didn't find that it was the interaction of the particular boom and that hydraulics intensifier that didn't cause the problem? That was one problem, Your Honor, among a number of problems, which were independent of the consequences of that Harkin intensifier. So you're saying that no reasonable jury could have looked at this record and decided it was the interaction of those two problems that led to the problem? In other words, that the boom would have been okay, but for the situation in which it was placed? I am suggesting that quite clearly, Your Honor. And the reason why I say that is because there were so many other problems. As an example, Judge Keada, the Paul system, which is the system which winds the sail into the boom and then back out of the boom, that system failed later on in the use by Mr. Sharpe of his yacht in the Mediterranean. And I submit to Your Honors, that had nothing to do with this fastener to which you just referred, Your Honor. I think if the court looks at the record in its entirety, with respect to the functionality of the boom, the design defects in the boom, and the manufacturing defects in the boom, I ask the court to recognize that the boom was really the sole cause for the loss of any use of the yacht by Mr. Sharpe. The jury wasn't instructed that it couldn't find the hydraulics to be the sole cause? That is correct. And so there was evidence of problems with the hydraulics? That is correct, sir. And then the jury, not having been instructed that it had to find the boom to be the sole cause, found no damages on the boom and damage in this amount of the hydraulics. So what's the problem? Well, the problem is, Judge, that the boom was the primary, the overwhelming, the dominant cause and effect. But you didn't get an instruction that, absent a finding of damages under the boom, you couldn't award damages in this amount? I agree with Your Honor. There was no such instruction. And then there was evidence of hydraulic failure? Hydraulic failure. And you also argued to them, separately, there should be no damages on the boom, right? Or not? There was damage related to the boom, and the boom caused the hydraulic failure. If you look at the record, when the boom fell, it severed the hydraulic line, and that was the failure. And it was promptly repaired by Hylas. If Your Honor looks at pages 5 and 6 of my brief, we cite to the record where Mr. Sharpe acknowledges the hydraulics were repaired and all the other warrants. Page 3 of the District Court's opinion, or is it the Magistrate's opinion? I'm not sure. I guess it's the Magistrate Judge's opinion. She has a paragraph where she just walks through after saying, you say it's inconsistent verdicts. And then she lists a whole bunch of things. The jury heard evidence the yacht had suffered a number of failures. Five hours after the yacht sailed, it experienced a hydraulic failure and had to be returned to Fort Lauderdale for repairs. She then mentions the boom fell off the mast and not clear why she mentions that. In addition, the hydraulic line was severed and spilled all over the deck. Then she says the yacht experienced a number of other problems, including hydraulic system malfunctions, electronic throttle failures, inoperable generator, windlass, I don't know what this means, windlass breakdowns, the failure of both water pumps and both battery chargers, and malfunction of three of the four vacu-flush heads. So what's wrong with what she's doing there? Two things are wrong, Judge, respectfully. The first is, those were minor, minor problems that could not have possibly, on any rational, reasonable basis, caused $663,000 of damage. And secondly... So just so I understand, did you move along after that verdict came in to say that that can't support the verdict, independent of the idea of being... Or is that just the same thing as arguing it's inconsistent? I'm not sure if I understand your question, Judge. Well, I guess I'm trying to figure out, is the... I guess the inconsistent verdict argument you're making is just an argument that those failures could not justify the $660,000 of damages? It's a little different from that. The argument is the jury found breaches of three warranties and contract, and found causation for harm or damage to Hylus. Yet, Hylus has to pay Mr. Sharp $663,000. The boom was the primary, if not overwhelming, cause. Mr. Sharp had to replace the boom at a cost of $140,000, and we get zero damages. I consider that... I recognize that, in my argument, as being an inconsistent verdict. And we asked the judge, I asked the judge, time to judge. Send it back to the jury with further instructions. Well, the jury was still there. She refused to do it, and that's why I brought the motion for a new trial. I'd like to address, if I may please, the damages argument, please. The judge, over our objections, our meaning all of the defendants, allowed testimony as to charter income, depreciation of the yacht to the amount of 20%. It's a yacht all of six months old, and all these other detention and demerit damages. We all objected. I submit that the judge's allowance of those damages is incorrect. As I understand the case law, the Conqueror case, and there's a very instructive case, from my perspective, certainly, the case of Branford Marine from the District of Connecticut. The court makes clear it's a pleasure craft, and with a pleasure craft, you are not entitled to loss of charter income without a prior record of charter income. That also includes any demerit damages. Mr. Scharf testified, I submit, incorrectly so, your honors, as to loss of charter income when he admitted that he never even offered the yacht for charter. Didn't even put it into a show, didn't even hire a broker, didn't even offer it for yacht charter until after the period of detainment, detainer, that he's claiming damages. And I submit the Conqueror case prohibits that, as does the progeny of its case law, and that case from Connecticut in particular says, it's not enough to say, oh, well, I chartered the yacht after the period of loss, and here's what the fair market value of that yacht is. The case is saying, no, incorrect. Mr. Scharf testified as to an extraordinarily high amount of damages, given what was at issue. I submit to the court the only proper measure of damages that the court should have allowed in was the cost to replace the boom, $140,000, the repairs associated with replacing the boom, and new costs to put the boom on, and maybe some damages relating to the use of fuel and satellite transmissions, because he was sending pictures back to the mainland from wherever he was. How do we, how do we, can you help us on the, your argument on the 93A claim? Sure. I submit to your honors that the case subsequent to Mallet called Evans versus Lorillard tobacco, which I cited in the brief, your honor, says the following, and it's in a footnote, and we've cited the footnote right in the text of our brief. That case, Judge, says the following, which is, we did not intend in Mallet to hold automatically a seller for a breach of warranty automatically violative of Chapter 93A. We didn't say that, and the case, that same case, Lorillard Judge, goes on to say, and we don't say it here. And the reason why I think it's important is because I don't believe that the Attorney General's regulations can enlarge the intent of the statute. Let's take, they do say that, but in fact, they didn't say that, Miller. They said generally. They said not automatically or always. But how do we separate the generally applicable scenario from the not 93A scenario? What factor do we look at? That's an excellent question, Judge. Let me suggest to you that Mallet is distinguishable because in Mallet, it was the combined finding of breach of warranty coupled with a finding of negligence. Not so in this case. And to take it a step further, Judge Bull did, in my view, a very thorough job of analyzing the factors that are present in this case that distinguish it from applying 93A. Let me submit to you, Your Honor, as follows. And it's in the judge's opinion. You can read it, certainly. Judge Bull said the following. One, Mr. Sharp impeded, interfered with the ability of HILAS to fulfill its warranties. He kept leaving early before the yacht could be tested and tweaked, and that's part of what we call the commissioning process. And secondly, the court recognized, Judge Bull recognized, that HILAS as well as GMT did an extraordinary amount to try to fix it. And I think the judge went on to say there's no substantial and material breach of the warranty. And I submit to you, Your Honor, that's why her finding is correct. I heard the buzzer go, so I'm out of time. Any other questions, Your Honor? No, thank you. Okay, Judge. And I reserve the floor to you. You already have. Okay. Thank you very much, Judge. Your Honor, may I proceed? You may. May it please the Court. My name is Robert Collins. I represent GMT Composites, Inc., the Bull manufacturer. And as I would like to begin with the inconsistent verdict, as that seems to pique Your Honor's interest, first, there's no disagreement here as to the law. My brother concedes that if there is a plausible explanation, the jury verdict stands. And Your Honor's 20 years ago indicated that it's very reluctant to find an inconsistent verdict. Judge Kayana and Judge Barron both hit on one of the reasons that I think the jury could have found the way it did. The hydraulics. My brother says there's no evidence in the record. In fact, there is. There's correspondence in the record that the hydraulics were changed after hull number five, the Drucker vessel. There's no evidence that that change was made known to GMT. In fact, there's evidence that it was not made known to GMT. And, in fact, that is unrefuted, that it was not made known. There's absolutely no testimony from Mr. Jackney or anyone. There's no expert opinion that it was made known to GMT. My brother suggests that Mr. Merrick, the expert put on by the plaintiffs, rendered an opinion that GMT should have been responsible for the coordination. That is clearly incorrect. Let's assume the jury could have found what you just said, that there was a change in the hydraulics after hull five. GMT didn't know, and they had no duty to know. Is there anything in the record that would allow the jury to find that that fact was then the proximate cause of the boom failures? Sure. There's the opinion from the plaintiff's expert, Mr. Merrick. He rendered a direct opinion. I remember it because it was a surprise to me, that the cause of the first failure on December 10, after the vessel left Fort Lauderdale, after returning to get the hydraulics fixed, he rendered an opinion that the cause of the first failure was due to the hydraulics, which was a total surprise to me, frankly. And I cited in the record my cross-examination that GMT had no knowledge, and that was his understanding, that GMT had no knowledge that the hydraulics had been changed, and that was the cause of the first failure. And that just led on to everything after that. The records repeat that GMT responded to everything Mr. Sharp brought to his attention, and they tried to fix everything. The other prong of his argument is that the damages, if you look at the damages, that cannot be explained by the hydraulics and the non-boom, that the figure is simply too large. What is your response to that? Well, it can be, because if the hydraulics are what caused the problems with the boom, and what ended up with Mr. Sharp having to replace the boom, then it tailors back to the hydraulics. That's what started the whole problem, and we had no involvement in that. There's another possible explanation for the jury verdict. As Judge Barron referenced, the judge cited all of these other problems. One of them was the commissioning problem, that there just wasn't enough time given to Mr. Sharp to learn how to operate this system. That can lead to the other problem. Our opinion as to the first failure, at least Mr. Sharp's testimony, was that it was the captain hitting up and down at the same time, just overpowering. That can come from lack of training. That's an alternate basis that can explain how the damage to the boom was caused by a non-GMT-related event. Some of the problems with the boom had to be the responsibility of GMT, given the jury verdict. We admitted that the problem with the clevis and the set screws were a problem. That's the basis for the jury finding the breach of warranties and the breach of contract. But you're saying they didn't cause damages because you replaced them. Exactly. That's why there's no damages. We fixed it. We did what a responsible manufacturer is supposed to do. We showed up, we sent people there, we fixed what we could. And Mr. Sharp even admitted that he had no problems with GMT's reaction. He didn't sue us. Wow. Time is short. If I can wrap up, there was no mention about the jury instruction, I believe. I'll rest on the brief on that and also on the motion for directed verdict. There's no evidence that there was any special relationship or any kind of... This was just a vendor of MD. Thank you. Thank you, counsel. Good morning, and please, the court. Warren Hutchinson for Nelson Sharp in Destiny LLC as the appellees. As I'm sure you're aware, being familiar with the briefs, our brief demonstrates that on the two issues that have been appealed by Highless Yachts, the issue of evidence, damaged evidence, and spoliation, this court may not even address the substantive issues related to those appellate issues because no objections were made during the trial at critical times to the introduction of that evidence, and that's on both issues. This appeal has been weighed. We've also shown in the briefs, however, that the trial judge did apply the appropriate substantive law, and there was no reversible error whatsoever that gave rise to the jury verdict. On the damages issue, both on large charter and on the so-called detention damages, we have the two exhibits, both of which were initially stipulated as invisible exhibits. One was then objected to. Those are Exhibits 38 and 291, but they were my client's answers to interrogatories where they asked my client, what are your damages? And my client then outlined the damages in excess of a million dollars. Those exhibits were before the jury. There was an objection to 38 at some point, and we cite to the record where the judge would go through this whole issue because she sent us back to restipulate on what the remaining exhibits were. We did that, and at least as for 291, that was an exhibit that was not objected to, and it laid out in chapter and verse exactly what my client was asking for for damages, which included all these issues that they're now saying should not have been considered by the jury. So it was before the jury without objection, and so it was absolutely waived. Also, we cite to the trial testimony where we ask, for example, on the charter revenue, point blank, Mr. Sharp, are you seeking lost charter revenue? Yes, I am. How much are you asking for? $3,000 to $20,000. Asked, answered, no objection. It was in front of the jury without objection. The same issue on the detention damages, and quite frankly on the detention damages, those that they argue shouldn't be precluded under the precedent of the conqueror. Well, again, we demonstrate in our brief that the conqueror does not hold that an individual, as the record shows here, that purchases a yacht for both pleasure and commercial use, tells the seller, I'm purchasing this for commercial use, everyone understands it's going to be used for commercial use, and is prohibited from using it for commercial use because of a breach of warranty, that so-called demerged lost charter revenue and other types of commercial loss is not recoverable, simply because we didn't have the opportunity to charter it before the warranty breaches occurred. That's not the law. All the cases that they cite, and we identify the language, makes it clear that in those cases either they were for purely personal recreational use and not commercial use, or the court says that there was absolutely no admissible evidence that rose above the speculative level. What's the best, earliest evidence in the record of his intention to use it for commercial use? He testified, and in fact the judge's decision on summary judgment references, I think parties didn't contest, that he informed Hylas that he was purchasing it, wasn't going to even charter it, that he created Destiny Yachts for that specific purpose, and that as soon as the repairs were made to the extent that he could charter it, he immediately chartered it. In his own testimony, that the only thing that prevented him from chartering it earlier... Was there anything in the paper? Destiny Yachts is a LLC? It's an LLC, right. Does it have any papers creating it that would reference its intention to be a chartering company? I don't believe there's anything in the record that specifically says created, like a corporate statement identifying what it was, but the testimony was unrebutted. So it's the informing of Hylas Yachts as the evidence of his early intention? Informing Hylas Yachts put Hylas Yachts on notice, but it was his own testimony that it was always his intention, and that as the moment that the repairs were made sufficient to charter it, he advertised it and he chartered it, and he had a weekly rate set through brokers to charter the boat. So there's... And on spoliation, I'll rest on my brief, but again, the issue... There's no suggestion here, credibly, that anything in terms of this same trial that was denied should have resulted in dismissal of the case. In fact, Registry of Callings decided dismissal was not appropriate, and he reserved until trial the issue of what, if any, sanctions should be on spoliation, meaning what instruction should be given to the jury on that issue. Judge Bull found that there was no reason to give a spoliation instruction. None was given, and there was no objection to that point. So again, that was waived, and also for all the reasons we've identified, there was no spoliation. Thank you. Your time is up. Mr. Juret? May it please the Court? It's actually Stephan Juret for the buyers. Your pronunciation, sorry. Thank you, Your Honor. Judge Kayotta, we are actually squarely within the line of cases that includes My A in 1990. It's longstanding law in the Commonwealth of Massachusetts that a material breach of a warranty by a seller of goods commits a 93A violation. What about the statement in Evans v. Lorillard in Maylett? We concluded that joint findings of breach of implied warranty of merchantability and negligence are legally sufficient to constitute a violation of General Laws, Chapter 93A, Section 2. Because we are remanding the case, we decline, as we did in Maylett, to decide whether liability should be imposed automatically under 93A whenever a defendant has violated the warrant of merchantability, even when there is no finding of negligence. Well, there's no finding of negligence here. The SJC seems to have relegated its earlier statement to sort of dicta status and to given the magistrate judge here the leeway that she took on the 93A claim. Well, Judge Lynch, I think it's essential to understand that the Evans case is a tobacco liability case. Why is that important? It's important because the language that Your Honor just quoted is directly relevant to the claims in that case, which did not involve a breach of an express warranty. So negligence gets wrapped up into that whole analysis. That's a very separate path than talking about the breach of an express warranty,  Because that case was an implied warranty case and this case is an express warranty case? That's correct. We have both an implied warranty. The jury found for us on implied warranty of merchantability, implied warranty of fitness for a particular purpose, but we also had that express warranty in Paragraph 10 of the sales contract. It's an extensive stem-to-stern warranty. Everyone has acknowledged that this vessel was plagued with problems. Does that mean you're saying she's only wrong with respect to the express warranty? Judge Barrett, I would say that I'm not entirely sure I understand Your Honor's question. I thought you said you have in this case both an implied warranty and express warranty. We have. That's correct. Then I thought you were saying to Judge Lynch that the distinction here was we're dealing with an express warranty rather than a moral arbitrage dealt with an implied warranty. I think that it gets clouded because... So that's the distinction that I'm asking you. Are you saying that she, insofar as she said no 938 claim could lie here, she's wrong only with respect to that aspect of your claim, which is relying on the express warranty breach? I think that's correct. Did you argue that in your brief? I don't know that they articulated it in that fashion, Your Honor. So you do agree that there is no authority in Massachusetts, no court authority binding on us that says, even with respect to the breach of an express warranty, that that is a per se 938? The Massachusetts courts seem to have repeatedly sidestepped actually so stating. Well, not in Massachusetts, but in this court's McDermott decision in 2014, the court talked about the second pathway for a per se violation, and that's directly relevant to what we have here because of Magnuson-Moss Federal Warranty Act. But did you argue Magnuson-Moss in the trial court? We did not, and this presents the issue of the raise it or waive it rule in this court, and, of course, there's an exception for that when the issue is so significant that it would virtually ensure the success of the appellate. And I certainly state to this court that the Magnuson-Moss Warranty Act violation is so significant. A little explanation about why it wasn't cited. Why it wasn't cited is because we brought this case in 2011, two years prior to Claremont, three years prior to McDermott. The law is in flux. Neither Claremont nor McDermott talk about the particular attorney general regulation that we cited, which is 940CMR 3.08. They had nothing to do with warranties. We had no reasonable way to anticipate that, and we brought this up as soon as we took a deeper dive. We had no way to know that a judge would determine that a material breach of warranty causing $664,000 of damage would not produce unfairness. We think that conclusion is incorrect on its face. Thank you. Thank you. Yes, Rebobo. Your Honors, with respect to the comments made by Mr. Hutchinson concerning Mr. Sharpe's pre-existing intent to operate this yacht as a commercial venture. He testified he only had it, only used it as a pleasure craft. He registered it as such. The charter agreements with his different charter lessees, if you will, it says pleasure craft in each one of those. The title to this vessel recognizes it as a pleasure craft. The insurance policy that he has on this yacht recognizes it as a pleasure craft. And I submit to your Honors, nowhere in the record will you find any statements by Mr. Sharpe, except self-serving testimony at trial, that he was losing charter hire until such time as the lawsuit was started. Secondly... You're not disputing that he testified that he informed ILS that he was purchasing it and setting up Dustin Yachts for purposes of being a... I don't dispute that was his testimony. I dispute that that, well, the record is clear on that. With respect to GMT's comments that it was a responsible manufacturer and that it did everything it was supposed to do, the jury still found breach of warranty. So obviously, the jury believed GMT did not do everything it was supposed to do. And secondly, your Honors... They breached the warranty because there was a defect with one of those coupling plates or whatever, but it caused no damage because they fixed it at their expense. The problem that I have with that is there would be no breach because the warranty requires that he repair, that GMT repair, the component that is either defective or designed defectively. And if that were the case, then the jury would have come back and said no on all the questions. Relative to breach of contract and breach of warranty. Wasn't there also a warranty as to the suitability of that plate? And that was breached. They honored the warranty to make good, but there's a warranty that the product was not defective. I'm not sure if I know the answer to that, Judge. One last point, if I could make, please. With respect to Mr. Hutchinson's comments that we had waived our rights, HILAS waived its rights to contest the damages, I ask that the court look at addendum page 61. Mr. Hutchinson misinterprets what happened. I had a colloquy with the judge, and the judge said, are these exhibits contested? We contested exhibit 38. Exhibit 291 of the interrogatories, which contained within it, exhibit 38. And I said at line 14, Judge, there's a little misunderstanding. I wanted to confirm with these two gentlemen, plaintiff's counsel, we do not intend to put in exhibit 291. And so the judge said 38 is contested and 291 is not. And I think what the judge meant is it's not going in. Nowhere in the record was that exhibit identified as being admitted until the very end of the trial. Thank you, Your Honors. Thank you very much. We don't normally deal with yacht disputes, but we do from time to time. You've all done a good job arguing this. Thank you very much, Judge. Thank you.